**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| EVGENIY ILIN, individually and as Trustee of an Express Trust created by Fiduciary Agreement dated May 16, 2026, | Case No.: _____ |
| Plaintiff, | COMPLAINT AND DEMAND FOR JURY TRIAL |
| v. | |
| JPMORGAN CHASE BANK, N.A., ILYA SHULMAN, individually, KRISTA SANTORO, individually, | |
| Defendants. | |

## PRELIMINARY STATEMENT

1. This case is not a sanctions dispute and is not a dispute about whether OFAC should have issued a license. That issue was resolved by the United States Government after a lengthy review, when on April 22, 2026 OFAC issued Specific License No. RUSSIA-EO14024-2023-1033893-1, expressly authorizing the return of the blocked funds.

2. After the license was issued, the dispute became solely a dispute about implementation of the license and the good-faith completion of an authorized transaction.

3. For nearly four years, Plaintiff undertook all lawful actions available to obtain the return of the funds. Plaintiff communicated with OFAC, United States federal regulators, JPMorgan Chase departments, correspondent banks, congressional offices, and other participants in the process. Plaintiff provided extensive documentation establishing the lawful origin of the funds, the lawful basis for their return, and his authority to act for JSC SEQUOIA.

4. After OFAC issued the license, Plaintiff promptly provided JPMorgan Chase with all documents necessary to implement the license. Plaintiff also provided JPMorgan Chase with six different correspondent-banking routes and banking instructions, leaving the Bank free to select the route it considered safest and most compliant with its internal requirements. Plaintiff did not impose a single route; he gave JPMorgan Chase maximum operational flexibility.

5. JPMorgan Chase then selected the correspondent-banking chain and began implementing the license. By doing so, JPMorgan Chase confirmed that there was no legal barrier preventing implementation of the OFAC license.

6. Beginning in late April 2026, Plaintiff repeatedly informed JPMorgan Chase of the extraordinary urgency of the situation. Plaintiff informed the Bank that he suffered from a serious oncological disease, provided medical records, German clinic documentation, and evidence of the need to begin urgent treatment. Plaintiff also repeatedly warned JPMorgan Chase of the risk that the accounts of the JSC SEQUOIA branch at OJSC Eldik Bank would be closed.

7. On May 11, 2026, after Eldik Bank received the package including the OFAC license and supporting documents, Plaintiff was informed of serious compliance concerns and the likely closure of the accounts. Plaintiff immediately notified JPMorgan Chase of this development.

8. Plaintiff repeatedly warned the Bank that the transfer had to be completed no later than May 15, 2026 because the original route could become unavailable after that date. These warnings were provided both in writing and orally. JPMorgan Chase nevertheless failed to take reasonable action to accelerate implementation of the license or to implement an alternative route.

9. On May 20, 2026, Plaintiff received official confirmation that all accounts of the JSC SEQUOIA branch at OJSC Eldik Bank had been closed. JPMorgan Chase was promptly notified. From that moment, the original implementation route became objectively impossible.

10. After the accounts were closed, Plaintiff provided JPMorgan Chase with a fully disclosed fiduciary mechanism for implementation of the license (the Fiduciary/FBO Structure). The proposed structure contemplated that Plaintiff would receive the funds solely as Trustee and Fiduciary Administrator for the benefit of JSC SEQUOIA. Title and beneficial ownership of the funds would not transfer to Plaintiff. The beneficial owner would remain JSC SEQUOIA. Plaintiff provided JPMorgan Chase with a complete supporting package, including the fiduciary agreement, corporate resolutions, bank details, and legal explanations.

11. Throughout the relevant period, Defendants Ilya Shulman and Krista Santoro were copied on material correspondence and received documents concerning implementation of the OFAC license. They received account-closure warnings, medical documents, fiduciary-mechanism documents, the Formal Demand Letter of May 22, 2026, the Final Pre-Litigation Notice of May 28, 2026, and documents showing Payment Rejected and Return Leg in Progress statuses. They were therefore placed on actual notice of the material facts.

12. Despite this, Plaintiff did not receive a substantive response demonstrating a meaningful analysis of the materials submitted or a meaningful review of the proposed solutions. Instead, Plaintiff received general responses that failed to resolve the key obstacles to implementation of the license.

13. The official JPMorgan Payment Tracker, as well as independent SWIFT trackers, subsequently confirmed the transfer status as Payment Rejected and Return Leg in Progress. Despite this information, JPMorgan Chase failed to provide complete tracing information, failed to provide MT103 and MT199, failed to explain the change in UETR, and failed to identify the current location of the funds.

14. As a result of Defendants' acts and omissions, Plaintiff remains deprived of access to funds whose return was expressly authorized by the United States Government through an OFAC license.

15. For nearly four years, Plaintiff has been forced to fight for the return of the funds while simultaneously battling Stage IV colorectal cancer. Because the funds remain inaccessible, Plaintiff has been unable to begin necessary treatment in a timely manner. His financial situation has materially deteriorated, and he has been forced to abandon normal living conditions and devote his remaining strength to securing implementation of the license and the return of the funds.

16. This case is not an abstract banking dispute. It concerns a person who spent nearly four years seeking the return of funds that the United States Government later expressly authorized to be returned. It concerns a person battling Stage IV cancer who repeatedly warned Defendants of the consequences of continued delay. And it concerns decisions made after the issuance of an OFAC license by persons who were placed on notice of all material facts yet failed to secure a reasonable and timely resolution.

## I. PARTIES, JURISDICTION, VENUE, AND STANDING

17. Plaintiff Evgeniy Anatolievich Ilin is a citizen of the Russian Federation residing at Tameem House, 5 Al Fosool Street, Al Thanyah 1, Hadaeq Mohammed Bin Rashid, Dubai, Dubai Municipality, United Arab Emirates, Office 2505 (internal unit 2501-16).

18. Plaintiff is the Director of the structural subdivision of Joint Stock Company Sequoia (JSC SEQUOIA), namely the Branch of JSC SEQUOIA in the Kyrgyz Republic.

19. Plaintiff brings this action in two capacities: (a) as Trustee of an express trust created by Fiduciary Agreement / Temporary Agreement No. 01:2026 dated May 16, 2026 and Corporate Resolution No. 5 dated May 15, 2026; and (b) as an individual seeking compensation for personal harm caused by Defendants' acts and omissions.

20. Defendant JPMorgan Chase Bank, N.A. ('Chase' or the 'Bank') is a national banking association with its principal place of business at 270 Park Avenue, New York, NY 10017. Chase conducts banking activities throughout the United States, including in the Southern District of New York, and is subject to personal jurisdiction in this Court.

21. Defendant Ilya Shulman is an individual who, upon information and belief, holds or held the position of Head of Sanctions Legal and Executive Director at JPMorgan Chase Bank, N.A. Upon information and belief, Defendant Shulman was responsible for or participated in decision-making, analysis, or legal support concerning sanctions compliance, interpretation of OFAC licenses, and legal assessment of mechanisms for implementing sanctions-authorized transactions.

22. Defendant Krista Santoro is an individual who, upon information and belief, holds or held a senior compliance position at JPMorgan Chase Bank, N.A. Upon information and belief, Defendant Santoro was responsible for or participated in decision-making, analysis, or operational support concerning compliance procedures, internal reviews, blocking, implementation, or refusal to implement banking transactions.

23. Defendants Shulman and Santoro are named not merely because of their titles, but because they were copied on material correspondence and received documents, warnings, medical records, pre-suit demands, and notices concerning critical circumstances of this case.

24. Plaintiff alleges that these individual Defendants were placed on notice of material facts, including the valid OFAC license, the closure of the Eldik Bank accounts, medical urgency, Payment Rejected status, Return Leg in Progress status, and the proposed fiduciary/FBO structure, yet they did not ensure adequate analysis, review of the Bank's position, or reasonable corrective action.

25. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because the case arises in connection with the implementation of an OFAC license issued under the United States federal sanctions regime, including Executive Order 14024, 31 C.F.R. Part 587, and Specific License No. RUSSIA-EO14024-2023-1033893-1.

26. This Court also has alienage jurisdiction under 28 U.S.C. § 1332(a)(2), because Plaintiff is a citizen of the Russian Federation residing outside the United States; Defendant JPMorgan Chase Bank, N.A. is a national banking association organized under the laws of the United States, with its main office and principal place of business in the United States; Defendants Shulman and Santoro are, upon information and belief, United States citizens or domiciliaries; and the amount in controversy exceeds $75,000, exclusive of interest and costs.

27. This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over related New York law claims, including claims under UCC Article 4-A, good faith, negligence, personal harm, and related theories, because they form part of the same case or controversy.

28. Venue is proper in the Southern District of New York under 28 U.S.C. § 1391 because JPMorgan Chase Bank, N.A. has its headquarters in this District, a substantial portion of the banking, compliance, and legal decisions were made or coordinated in this District, and the individual Defendants performed or perform activities connected to this dispute through JPMorgan Chase units associated with New York.

29. Plaintiff has standing in two capacities.

30. First, Plaintiff acts as Trustee of an express trust. JSC SEQUOIA, as settlor and beneficiary, created a temporary, fully disclosed fiduciary/FBO structure under which Plaintiff was appointed Trustee / Fiduciary Administrator solely to receive, hold, account for, and later dispose of the funds for the benefit of JSC SEQUOIA.

31. This structure was created after the original corporate banking route became objectively impossible due to the closure of all accounts of the JSC SEQUOIA Branch at OJSC Eldik Bank on May 20, 2026.

32. The fiduciary/FBO structure does not change the beneficial owner of the funds, does not transfer funds into Plaintiff's personal ownership, does not conceal the origin of the funds, and is not designed to evade sanctions.

33. The structure was created solely as a temporary, transparent, and documented mechanism to implement an OFAC license already issued.

34. As Trustee of an express trust, Plaintiff is a real party in interest and may sue in his own name under Fed. R. Civ. P. 17(a)(1)(E).

35. Second, Plaintiff has independent standing as an individual because Defendants' acts and omissions caused him concrete, personal, and continuing harm.

36. Plaintiff suffers from Stage IV colorectal cancer. Defendants were repeatedly notified of this diagnosis, the need for urgent treatment, the need to pay a deposit to a German clinic, and the fact that continued delay threatened Plaintiff's life and health.

37. Defendants' refusal to complete implementation of the license, initiate return of funds, provide tracing information, consider a commercially reasonable fiduciary/FBO structure, and take corrective action after the original route collapsed directly worsened Plaintiff's personal, financial, and medical condition.

38. Alternatively, if the Court determines that further clarification of the real-party-in-interest status is required, Fed. R. Civ. P. 17(a)(3) provides a reasonable time for ratification, joinder, or substitution of the proper party. JSC SEQUOIA has already ratified Plaintiff's actions through Corporate Resolution No. 5, the power of attorney, and the fiduciary documents.

## II. FACTUAL ALLEGATIONS

### A. Preventive Blocking of Funds (2022-2026)

39. In October 2022, JSC SEQUOIA initiated an international wire transfer in the amount of $206,712.21 through a chain of correspondent banks. Plaintiff bore personal responsibility for the underlying contract.

40. Chase blocked the transfer pursuant to United States sanctions under Executive Order 14024.

41. In its response to a CFPB complaint dated March 27, 2026, Chase stated that it applied a preventive freeze without identifying any sanctions nexus or actual violation of law. The blocking was not based on Plaintiff or JSC SEQUOIA being listed on OFAC, SDN, or other U.S. restricted lists.

42. Plaintiff is not, and has never been, listed on OFAC, SDN, or other U.S. restricted lists. JSC SEQUOIA is likewise not listed on such lists.

43. For nearly three years, Plaintiff communicated with OFAC, submitted documents, and pursued a license. Plaintiff repeatedly notified Defendants of his Stage IV cancer diagnosis and the urgent need for the funds for medical treatment.

### B. Issuance of the OFAC License and Submission of Documents

44. On April 22, 2026, OFAC issued Specific License No. RUSSIA-EO14024-2023-1033893-1, authorizing Chase to return the funds to the originator at a non-blocked financial institution where the originator is able to demonstrate that it maintains an account.

45. The license did not use the narrower formulation 'account in the name of the originator.' It used the broader functional formulation 'where the originator is able to demonstrate they maintain an account.' Chase may not add to the OFAC license a condition that OFAC did not impose.

46. After issuance of the license, Plaintiff promptly provided Chase with the necessary documents, including payment instructions, power of attorney, branch-registration documents, and medical documents.

47. Beginning in late April 2026, Plaintiff repeatedly advised Chase of the extraordinary urgency and warned that further delay could make the original route impossible.

## C. Six Alternative Routes

48. To facilitate implementation of the license, Plaintiff provided Chase with six different correspondent-bank options and payment routes, leaving Chase free to select any route that it considered safest and consistent with its internal compliance requirements. Plaintiff did not impose a single route; he gave Chase maximum flexibility.

49. Chase did not provide written confirmation identifying which of the routes proposed by Plaintiff it attempted to use, what responses it received, or why particular routes were rejected. Plaintiff repeatedly requested this information, but Chase did not provide it. The repeated failures of correspondent banks to process transfers connected to previously blocked funds demonstrate a systemic problem with using the ordinary correspondent-banking network for this OFAC-authorized transaction.

## D. Technical Impossibility of Standard Banking Channels

50. Even if a new corporate U.S. dollar account could theoretically be opened, that would not guarantee successful execution of the payment. Repeated correspondent-bank refusals and failures demonstrated that ordinary correspondent-bank channels were not reliably functioning for this licensed transaction.

## E. Warning Regarding Closure of the Eldik Bank Account

51. On May 11, 2026, Plaintiff submitted to Eldik Bank a complete package including the OFAC license. Eldik Bank notified Plaintiff of compliance concerns and the likely closure of the accounts.

52. Plaintiff immediately informed Chase. Plaintiff warned that the transfer had to be completed no later than May 15, 2026, or the original route would become unavailable. These warnings were provided both in writing and orally.

53. Chase nevertheless failed to take reasonable steps to accelerate implementation of the license or implement an alternative route.

## F. Chase's Selection of BNY Mellon

54. After several unsuccessful attempts involving routes proposed by Plaintiff, Chase unilaterally selected BNY Mellon as the correspondent bank without agreement from Plaintiff.

## G. Initiation of the Transfer

55. On May 1, 2026, Chase informed Plaintiff that the transfer had been sent and provided UETR 44531299-1ad8-4ddb-a50f-0f1e186c2100. Plaintiff requested MT103, but Chase did not provide it.

56. On May 8, 2026, Chase resent the payment through BNY Mellon along the following chain: Chase -> BNY Mellon -> AKTIF YATIRIM BANKASI A.S. -> OJSC Eldik Bank -> Branch of JSC SEQUOIA.

57. Plaintiff emphasizes that Chase, not Plaintiff, was responsible for selecting reliable intermediary banks and for taking commercially reasonable steps to deliver the funds to the final beneficiary bank. Shifting responsibility to correspondent banks does not discharge Chase's obligation to take commercially reasonable steps to implement the OFAC license.

58. During implementation, Chase provided two different UETRs: first, 44531299-1ad8-4ddb-a50f-0f1e186c2100, and later BE654F5A-6C06-4839-BEC8-4C3EC138C2CE. The first UETR remained in Payment in Progress / ACSP status according to independent trackers. The second UETR was provided only after repeated inquiries by Plaintiff. The existence of two UETRs creates substantial uncertainty regarding the movement of funds and requires disclosure of why the second UETR was generated, how it relates to the first UETR, and the status of each transfer.

## H. Operational Failure, BNY Mellon, and Shifting Responsibility

59. After May 8, 2026, the transfer stopped moving.

60. On May 12, 2026, Plaintiff sent an urgent tracing request. Chase did not provide the requested information.

61. On May 19, 2026, Chase stated in writing: 'JPMC no longer holds the funds ... we must decline your request ... For further information, please contact BNY Mellon directly.'

62. Plaintiff contacted BNY Mellon. BNY Mellon responded: 'We are unable to assist as you are not a direct client. Pls have your Bank contact us direct via authenticated message.'

63. Thus, Chase referred Plaintiff to BNY Mellon, while BNY Mellon referred Plaintiff back to Chase.

64. Despite being notified on May 20-21, 2026 that the Eldik Bank account had been closed, Chase continued communications with BNY Mellon on May 22, 2026 regarding the original route rather than initiating a documented return of funds or meaningfully reviewing an alternative route.

65. On May 26, 2026, during a call with a Chase Executive Office representative, Plaintiff was informed that Chase had contacted BNY Mellon on May 22, 2026 and that BNY Mellon had pushed the payment further through the original route. This indicates that, despite notice that the Eldik Bank account had been closed, Chase continued to proceed through a route that had become unavailable. At minimum, this reflects gross negligence and commercially unreasonable handling of an OFAC-authorized transfer.

## I. Closure of the Beneficiary Account

66. On May 20, 2026, Eldik Bank officially confirmed closure of all accounts of the JSC SEQUOIA Branch, including the USD account.

67. Plaintiff immediately notified Chase. Chase did not take reasonable corrective action.

## J. Failure to Provide Information

68. Plaintiff repeatedly requested MT103, MT199, identification of the beneficiary bank, identification of the current holder of funds, and a complete SWIFT trace.

69. Chase refused or failed to provide the requested information in substance.

70. Plaintiff also seeks disclosure of the reasons for rejection or non-execution of the six alternative banking routes he proposed.

## K. Confirmation of Payment Rejected Status

71. On June 5, 2026, the official Chase tracker showed Payment Rejected status.

72. Independent trackers, including SWIFT gpi and Deutsche Bank, confirmed Payment Rejected and Return Leg in Progress.

73. The last update in independent trackers is dated May 22, 2026, and since that date the status has remained Payment Rejected. This confirms that no successful completion of the transfer occurred.

74. Plaintiff also provided screenshots of the publicly available Ohmyfin tracker showing ACSP status with last update on May 2, 2026. The Deutsche Bank tracker also showed no movement of funds. These independent sources confirm that the transfer was not completed and did not move in a manner consistent with successful execution.

## L. Proposed Fiduciary/FBO Structure Using Emirates NBD

75. After closure of the accounts, Plaintiff provided Chase with a fully documented alternative mechanism: a fiduciary/FBO structure using an Emirates NBD account in the UAE.

76. Plaintiff explained that JPMorgan Chase maintains correspondent relationships with Emirates NBD, making this route more reliable and faster, with fewer intermediary banks and a lower risk of rejection.

77. The funds would be received by Plaintiff solely as Trustee for the benefit of JSC SEQUOIA, without changing beneficial ownership. Plaintiff provided the Fiduciary Agreement, Temporary Agreement No. 01:2026, Corporate Resolution No. 5, Emirates NBD banking details, and explanations confirming no change of ownership and separate accounting.

78. Plaintiff repeatedly explained to Chase that the fiduciary structure did not change the beneficial owner: JSC SEQUOIA would remain the economic and beneficial owner. All supporting documents were provided to Chase. Chase nevertheless did not provide a legal basis for rejecting the mechanism and relied on formal objections concerning the account being in the name of an individual.

79. Chase refused to consider or implement this mechanism without a sufficient legal basis.

## M. Communications with OFAC

80. On May 21, 2026, Plaintiff submitted a request to OFAC. OFAC confirmed the validity of the license and indicated that Chase remained responsible for implementation.

81. Plaintiff provided OFAC and Chase information explaining that the original route through Eldik Bank had become objectively impossible, that correspondent-bank refusals were systemic, and that Plaintiff had proposed a fully disclosed fiduciary mechanism with unchanged beneficial ownership. OFAC did not state that such a mechanism was prohibited.

## N. Medical Urgency

82. Plaintiff provided medical records confirming Stage IV cancer and a clinic letter requiring a EUR 20,000 advance payment.

83. Chase nevertheless suggested that Plaintiff passively wait for a possible return until June 16-17, 2026, despite the threat to Plaintiff's life.

84. The suggestion to passively wait for an automatic return was made even though Chase knew that the beneficiary account had been closed on May 20, 2026 and that the original route no longer existed. Such a suggestion was not commercially reasonable and shifted responsibility to automatic processes when active action by Chase was required.

85. Defendants' continued inaction worsened Plaintiff's health condition, prevented him from beginning treatment, and created a direct threat to his life.

### O. Formal Demand Letter

86. On May 22, 2026, Plaintiff sent a formal demand letter with 21 exhibits and set a five-business-day deadline. Chase did not provide a substantive response or satisfy the demands.

### P. New Contact Person

87. On June 2, 2026, Chase assigned a new contact person, Richard, but this did not result in any substantive information or operational resolution.

### Q. Request to Check Internal Chase Accounts

88. On June 4, 2026, Plaintiff requested that Chase check internal accounts and queues, including suspense, repair queue, reconciliation, compliance review, and investigation queue. Chase did not provide a substantive response.

### R. Systematic Disregard of Information Provided by Plaintiff

89. Plaintiff provided Chase with account-closure warnings, confirmation of closure, six alternative routes, the full fiduciary/FBO package, tracing requests, and medical documents.

90. Chase did not take reasonable corrective action, did not initiate a documented return of funds, did not provide MT103/MT199, and did not provide a legal basis for rejecting the fiduciary/FBO structure.

### S. Amount with Interest

91. On June 4, 2026, Plaintiff identified the amount of $234,060.80, including interest, and requested a written explanation for Chase's refusal to use the fiduciary/FBO mechanism. Chase did not provide such an explanation.

### T. Knowledge of Shulman and Santoro

92. Throughout the relevant period, Defendants Ilya Shulman and Krista Santoro were copied on material correspondence.

93. They received account-closure warnings, Eldik Bank documents, fiduciary/FBO documents, medical documents, the Formal Demand Letter, the Final Pre-Litigation Notice, and documents concerning Payment Rejected and Return Leg in Progress.

94. Accordingly, Defendants Shulman and Santoro possessed information about the material facts and cannot reasonably claim that they were not placed on notice of the situation.

95. Plaintiff did not receive any substantive response demonstrating an analysis of the documents submitted or a review of the proposed alternatives.

96. The acts and omissions of Defendants Shulman and Santoro contributed to the continuation of the violation of Plaintiff's rights or the absence of corrective measures.

### U. Exhaustion of Administrative and Non-Judicial Remedies

97. Plaintiff took all lawful steps available to resolve the matter without litigation.

98. Plaintiff repeatedly contacted the CFPB, OCC, Federal Reserve Board / Ombuds, OFAC, Treasury OIG, NYAG, NYDFS, OCR, BNY Mellon, AKTIF YATIRIM BANKASI A.S., JPMorgan Chase leadership, and congressional offices.

99. No administrative or non-judicial channel produced an actual resolution of the situation.

100. OFAC confirmed the validity of the license but did not operationally compel Chase.

101. BNY Mellon refused to communicate with Plaintiff because Plaintiff was not its direct client.

102. Chase directed Plaintiff to BNY Mellon, while BNY Mellon directed Plaintiff back to Chase.

103. As a result, Plaintiff was left without an effective non-judicial remedy.

### III. PERSONAL HARM, HUMANITARIAN CONSEQUENCES, AND UNBEARABLE CONDITIONS

104. This case concerns not only a wire transfer, sanctions compliance, or technical issues of international banking. For Plaintiff, it has become a matter of survival.

105. Since October 2022, Plaintiff has effectively been deprived of access to funds that were later expressly authorized for return by the United States Government through an OFAC license.

106. For nearly four years, Plaintiff has acted consistently and in good faith to resolve the matter lawfully. Plaintiff communicated with OFAC, JPMorgan Chase, BNY Mellon, federal regulators, congressional offices, correspondent banks, and other participants.

107. Plaintiff provided extensive documentation, including corporate records, authority documents, banking documents, OFAC-license materials, medical records, German clinic documents, pre-suit demands, alternative payment routes, and the fiduciary/FBO structure.

108. Despite this, Defendants did not complete the licensed transfer.

109. During the fight to implement the OFAC license, Plaintiff's health materially worsened. Plaintiff was diagnosed with Stage IV colorectal cancer.

110. Defendants were repeatedly notified of this diagnosis and were provided medical reports, examination results, and German clinic documents confirming the need for urgent treatment.

111. Defendants knew or should have known that further delay created a direct threat to Plaintiff's life and health.

112. Despite this knowledge, Defendants failed to take reasonable steps to complete the transfer, return the funds, or implement a lawful alternative mechanism.

113. Plaintiff repeatedly brought to Defendants' attention the closure of the Eldik Bank accounts, the impossibility of using the original route, the Payment Rejected status, Return Leg in Progress, and the need for urgent action.

114. Instead of a substantive analysis of the materials submitted, Plaintiff received general responses that did not answer the questions posed, did not identify the location of the funds, and did not show consideration of the critical facts previously provided.

115. As a result of Defendants' acts and omissions, Plaintiff is in an extremely difficult financial and living situation. Funds needed for treatment remain inaccessible. Plaintiff is deprived of the ability to live normally and focus on medical treatment and recovery.

116. Because of his deteriorated financial condition, Plaintiff was forced to abandon normal living conditions and effectively use office space as a place of constant stay, work, and rest.

117. Plaintiff experiences constant stress, anxiety, insomnia, physical exhaustion, fear of further deterioration, and fear that he will not receive the necessary treatment in time.

118. Plaintiff is the father of two minor daughters and is forced to live with the daily knowledge that further delay in implementing the OFAC license may deprive him of the chance to obtain treatment, recover, and return to a full life with his children.

119. The harm suffered by Plaintiff is real, ongoing, and directly connected to Defendants' acts and omissions.

## IV. PATTERN OF EVASIVE AND NON-RESPONSIVE COMMUNICATIONS

120. After issuance of the OFAC license, Chase repeatedly received from Plaintiff specific factual questions, documents, and demands.

121. Plaintiff repeatedly demanded that Chase confirm the current location of the funds, provide MT103, provide MT199, provide a complete SWIFT trace, explain Payment Rejected, explain Return Leg in Progress, explain the second UETR, explain the relationship between the two UETRs, and review the fiduciary/FBO structure.

122. Chase's responses did not disclose the location of the funds.

123. Chase's responses did not explain the discrepancy between the two UETRs.

124. Chase's responses did not explain Payment Rejected.

125. Chase's responses did not explain Return Leg in Progress.

126. Chase's responses did not analyze the closure of the Eldik Bank accounts.

127. Chase's responses did not analyze the fiduciary/FBO structure.

128. Chase's responses did not provide a legal basis for refusing to use the proposed mechanism.

129. Chase's responses did not provide a concrete plan to complete implementation of the OFAC license.

130. This pattern reflects systematic avoidance of substantive review of Plaintiff's materials and commercially unreasonable handling of an OFAC-authorized humanitarian transfer.

## V. NO ADEQUATE REMEDY WITHOUT COURT INTERVENTION

131. Plaintiff exhausted all reasonable non-judicial and administrative avenues for resolving this dispute.

132. OFAC confirmed the validity of the license but indicated that further implementation depended on the financial institution to which the license had been issued.

133. BNY Mellon refused to communicate with Plaintiff because Plaintiff was not its direct client.

134. Chase, in turn, directed Plaintiff to BNY Mellon.

135. Thus, Plaintiff was trapped in a closed loop: Chase directed Plaintiff to BNY Mellon; BNY Mellon directed Plaintiff back to Chase; OFAC confirmed the license but did not provide operational compulsion; regulators did not provide an effective remedy.

136. Without court intervention, Plaintiff has no effective remedy.

137. Only the Court can require Chase to disclose documents, provide tracing, explain the transfer status, request return of funds from the correspondent chain, and/or complete implementation of the license through a commercially reasonable lawful route.

## VI. LITIGATION HOLD AND PRESERVATION OF EVIDENCE

138. Plaintiff demands preservation of all documents, electronic data, messages, records, internal reports, logs, audio recordings, memoranda, investigation materials, compliance reviews, sanctions reviews, legal reviews, wire-operations records, and other materials related to this dispute.

139. This preservation demand includes, without limitation, SWIFT messages, MT103, MT199, UETR logs, SWIFT gpi records, interbank messages, communications between Chase and BNY Mellon, communications among Chase, BNY Mellon, and AKTIF YATIRIM BANKASI A.S., documents concerning both UETRs, documents concerning Payment Rejected and Return Leg in Progress, documents concerning closure of the Eldik Bank accounts, documents concerning the fiduciary/FBO structure, documents concerning the Emirates NBD route, documents concerning the six alternative routes, documents concerning medical urgency, and documents held by Executive Office, Sanctions Legal, Compliance, Wire Operations, Investigations, Reconciliation, Suspense Queue, Repair Queue, and related internal departments.

140. Plaintiff also demands preservation of call recordings, call notes, internal case notes, escalation logs, case-management records, internal chat messages, email threads, and any other electronic traces connected to Case Nos. ECW260309-01584-R1, ECW260309-01584-R2, and related internal JPMorgan Chase cases.

141. Deletion, destruction, alteration, concealment, or failure to preserve these materials after pre-suit demands, the Final Pre-Litigation Notice, and this action may warrant adverse inference, evidentiary sanctions, and other relief the Court deems just.

## VII. ADDITIONAL LEGAL ARGUMENTS

### A. Chase Misinterprets the OFAC License

142. OFAC License No. RUSSIA-EO14024-2023-1033893-1 authorizes return of funds to the originator at a non-blocked financial institution where the originator can demonstrate that it maintains an account.

143. The license does not use the narrow phrase 'account in the name of the originator.' If OFAC intended to limit implementation only to an account formally titled in the originator's name, it could have said so. It did not.

144. Plaintiff's fiduciary/FBO structure is consistent with the license because beneficial ownership does not change, the funds do not become Plaintiff's personal property, Plaintiff acts solely as Trustee / Fiduciary Administrator, the structure was fully disclosed to Chase, and its purpose is solely to implement an already issued OFAC license after the original route failed.

### B. Fiduciary/FBO Structure Is a Single Transparent Structure

145. The mechanism proposed by Plaintiff is a single, fully disclosed fiduciary/FBO structure. It is not two separate mechanisms. It is one legal and banking structure under which Plaintiff receives funds not as a personal beneficiary but as Trustee / Fiduciary Administrator for the benefit of JSC SEQUOIA.

146. Plaintiff did not request a change of ownership, did not request that the funds become his personal property, did not seek to conceal JSC SEQUOIA, and did not seek to evade sanctions. Plaintiff requested only that Chase complete implementation of an already issued OFAC license through a transparent, documented, temporary, and commercially reasonable mechanism.

### C. Chase Was Obligated to Consider a Commercially Reasonable Alternative Route

147. After closure of the Eldik Bank accounts, the original route became objectively impossible.

148. Plaintiff warned Chase of this risk in advance.

149. Plaintiff provided Chase with six alternative routes and the fiduciary/FBO structure.

150. Chase was not required to use the exact route proposed by Plaintiff. But Chase was required to consider proposed alternatives in good faith and in a commercially reasonable manner, or to propose another lawful route.

151. Instead, Chase left the licensed transfer in operational uncertainty.

## D. Interest

152. Plaintiff seeks interest for the entire period of unlawful or unreasonably prolonged blocking and subsequent non-implementation of the license.

153. Plaintiff states that as of June 4, 2026, the execution amount with interest was identified as $234,060.80.

154. Plaintiff requests interest at the rate the Court deems applicable and equitable, including any rate applicable to blocked funds, a commercially reasonable Chase rate, statutory prejudgment interest including, if applicable, CPLR § 5004, or another enhanced rate in light of gross negligence, lack of good faith, and the duration of the withholding.

## E. An Individual May Serve as Trustee

155. Plaintiff is an individual acting as Trustee under an express trust created solely for receipt and administrative management of funds for the benefit of JSC SEQUOIA.

156. No separate OFAC license in the name of the trustee is required. The OFAC license authorizes return of funds to JSC SEQUOIA; the fiduciary/FBO structure is a technical mechanism for receipt of those funds for the beneficiary.

## F. Chase Must Determine and Implement a Lawful Route

157. Chase, as the bank to which the OFAC license was issued and as the bank that began executing the transfer, was required to take commercially reasonable steps to complete implementation of the license.

158. Chase cannot rely on inability to find an alternative route because Plaintiff provided six alternative routes and a fully disclosed fiduciary/FBO mechanism.

159. A request for return of funds from the correspondent chain is Chase's responsibility as the bank that selected the correspondent chain and initiated the transfer.

## G. Discriminatory Factor

160. Plaintiff is a citizen of the Russian Federation, and Defendants knew this.

161. Plaintiff alleges that Chase's handling of this matter was aggravated by Plaintiff's national origin and by heightened compliance treatment of persons connected to Russia, even where a valid federal OFAC license exists.

162. This factor is relevant to punitive damages and the overall character of Defendants' conduct.

## VIII. ALTERNATIVE PLEADING

163. Plaintiff pleads in the alternative and cumulatively to the extent permitted by the Federal Rules of Civil Procedure.

164. To the extent the Court determines that Plaintiff may not seek implementation of the OFAC license solely as Trustee / Fiduciary Administrator, Plaintiff alternatively asserts claims as an individual who suffered direct personal, medical, financial, and emotional harm from Defendants' acts and omissions.

165. To the extent the Court determines that the fiduciary/FBO structure is not a mandatory route for Chase, Plaintiff alternatively seeks an order requiring Chase to use any other commercially reasonable, lawful, documented, and operationally workable route to complete implementation of the OFAC license.

166. To the extent the Court determines that the funds must first be returned from the correspondent chain, Plaintiff seeks an order requiring Chase to initiate, pursue, and document recall / return of funds from BNY Mellon, AKTIF YATIRIM BANKASI A.S., or any other bank where the funds are actually located.

167. To the extent the Court determines that claims against Ilya Shulman and Krista Santoro require additional specificity, Plaintiff requests leave to amend after discovery because the key facts concerning their participation, internal decisions, communications, and instructions are in Chase's possession and unavailable to Plaintiff before discovery.

168. No alternative theory should be deemed a waiver of any other claim, right, remedy, or legal basis.

## IX. DECLARATORY AND INJUNCTIVE RELIEF

169. Plaintiff requests a declaratory judgment that JPMorgan Chase Bank, N.A. is obligated to take commercially reasonable measures to complete implementation of OFAC License No. RUSSIA-EO14024-2023-1033893-1.

170. Plaintiff also requests a declaration that Chase may not leave the licensed transfer in a state of uncertainty after the OFAC license was issued, Chase began implementation, Chase selected the correspondent chain, the transfer was not completed, the original route became impossible, Plaintiff provided alternative routes, Plaintiff provided a fiduciary/FBO structure, and Chase was notified of medical urgency, account closure, Payment Rejected, and Return Leg in Progress.

171. Plaintiff requests injunctive relief requiring Chase, by a deadline set by the Court, to provide a complete trace of the funds, provide MT103, provide MT199, disclose the status of both UETRs, disclose the location of the funds, provide all interbank messages, explain the reasons for Payment Rejected, explain the reasons for Return Leg in Progress, initiate recall / return of funds from the correspondent chain, and after return of funds complete implementation of the OFAC license through the fiduciary/FBO structure, the Emirates NBD route, or another commercially reasonable and lawful route.

172. Plaintiff further requests that the Court set a concrete deadline for these actions in light of medical urgency, Plaintiff's Stage IV cancer diagnosis, and the continuing nature of the harm.

## X. CAUSES OF ACTION

### FIRST CAUSE OF ACTION - Violation of UCC § 4-A-402 (against JPMorgan Chase Bank, N.A.)

173. Plaintiff realleges and incorporates all preceding paragraphs.

174. UCC § 4-A-402(3)-(5) and the official comments require a sender's bank to ensure return of funds where a funds transfer is not completed.

175. The transfer was not completed. The funds were not credited to the beneficiary. Payment Rejected and Return Leg in Progress confirm that the transfer was not successfully completed.

176. Chase refused or failed to take commercially reasonable steps to request return of funds from the correspondent chain. Chase violated UCC § 4-A-402.

## SECOND CAUSE OF ACTION - Violation of UCC § 4-A-302(b) (against JPMorgan Chase Bank, N.A.)

177. Plaintiff realleges and incorporates all preceding paragraphs.

178. UCC § 4-A-302(b) permits use of a commercially reasonable alternative route.

179. The original route became impossible after closure of the Eldik Bank accounts. Plaintiff provided six alternative routes and the fiduciary/FBO structure. Chase refused to use the proposed route and did not propose another reasonable alternative. Chase violated UCC § 4-A-302(b).

## THIRD CAUSE OF ACTION - Breach of Duty of Good Faith, UCC § 1-304 (against JPMorgan Chase Bank, N.A.)

180. Plaintiff realleges and incorporates all preceding paragraphs.

181. UCC § 1-304 requires good faith in performance and enforcement.

182. Chase ignored Plaintiff's warnings, refused to provide information, shifted responsibility to BNY Mellon, failed to review alternatives, and proposed passive waiting despite medical urgency. This conduct breached the duty of good faith.

## FOURTH CAUSE OF ACTION - Gross Negligence Causing Personal Harm (against all Defendants)

183. Plaintiff realleges and incorporates all preceding paragraphs.

184. Defendants knew or should have known of Plaintiff's diagnosis, medical urgency, account closure, failure of the original route, and the risk of continuing harm.

185. Defendants nevertheless failed to take reasonable corrective measures. This conduct constitutes gross negligence and caused Plaintiff personal, financial, medical, and emotional harm.

## FIFTH CAUSE OF ACTION - Emotional Distress / Personal Harm (against all Defendants)

186. Plaintiff realleges and incorporates all preceding paragraphs.

187. Defendants' acts and omissions caused Plaintiff severe emotional and physical suffering, including anxiety, insomnia, deterioration of health, fear of death, loss of normal living conditions, and inability to begin timely treatment.

188. These harms were a foreseeable consequence of Defendants' conduct.

## SIXTH CAUSE OF ACTION - Failure to Provide Material Transfer Information and Breach of Commercially Reasonable Banking Duties (against JPMorgan Chase Bank, N.A.)

189. Plaintiff realleges and incorporates all preceding paragraphs.

190. Chase refused or failed to provide MT103, MT199, complete SWIFT trace, location of funds, explanation of the two UETRs, Payment Rejected, and Return Leg in Progress.

191. This refusal deprived Plaintiff of the ability to determine the status and location of the funds.

**SEVENTH CAUSE OF ACTION - Aiding and Abetting / Substantial Assistance (against Ilya Shulman and Krista Santoro)**

192. Plaintiff realleges and incorporates all preceding paragraphs.

193. Defendants Shulman and Santoro were placed on notice of material facts, including the OFAC license, account closure, medical urgency, Payment Rejected, Return Leg in Progress, and the fiduciary/FBO structure.

194. Despite this notice, they did not ensure adequate analysis, review of Chase's position, or corrective action. To the extent discovery confirms their participation, approval, inaction, or substantial assistance in the continuation of the violations, they are liable. Plaintiff pleads this claim based on information currently available and seeks discovery into the individual Defendants' specific roles, approvals, communications, and failures to act.

## XI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

1. Declare that JPMorgan Chase Bank, N.A. violated UCC § 4-A-402, UCC § 4-A-302(b), the duty of good faith under UCC § 1-304, and commercially unreasonable handling of an OFAC-authorized humanitarian transfer;

2. Declare that Defendants' acts and omissions caused Plaintiff personal, financial, medical, and emotional harm;

3. Award damages, jointly and severally or in such allocation as the Court deems just, including: (a) principal damages of $206,712.21; (b) the licensed execution amount with accrued interest of not less than $234,060.80 as of June 4, 2026; (c) additional prejudgment interest from October 2022 through judgment at a rate the Court deems applicable, equitable, and supported by evidence; (d) punitive damages of $1,000,000 or such other amount sufficient to punish and deter similar conduct; (e) compensation for emotional distress, physical suffering, diminished quality of life, and humanitarian consequences in the amount of $500,000 or such other amount the Court deems just; (f) costs and documented expenses, including mailing, notarization, translation, and related costs; and (g) attorneys' fees if recoverable under applicable law;

4. Order, or in the alternative require Defendants through discovery, to produce: (a) all internal sanctions-screening reports that led to blocking of the funds in 2022; (b) the blocking report filed with OFAC; (c) all internal emails, compliance memoranda, legal memoranda, and records concerning blocking, license implementation, and rejection of proposed routes; (d) complete tracing information, including MT103, MT199, SWIFT gpi status, UETR trace, and all related interbank messages; (e) all communications between Chase and BNY Mellon; (f) all communications among Chase, BNY Mellon, AKTIF YATIRIM BANKASI A.S., and other participants in the correspondent chain; (g) documents explaining the second UETR and its relationship to UETR 44531299-1ad8-4ddb-a50f-0f1e186c2100 and UETR BE654F5A-6C06-4839-BEC8-4C3EC138C2CE; (h) documents explaining Payment Rejected and Return Leg in Progress; (i) documents explaining rejection or non-execution of the six alternative routes; (j) documents concerning review or refusal to review the fiduciary/FBO structure; (k) documents concerning medical urgency, Stage IV cancer diagnosis, clinic payment request, and humanitarian factors; and (l) documents held by Ilya Shulman, Krista Santoro, Executive Office, Sanctions Legal, Compliance, Wire Operations, Investigations, Reconciliation, Suspense / Repair Queue, and related units;

5. Enter declaratory judgment that JPMorgan Chase Bank, N.A. is obligated to take commercially reasonable measures to complete implementation of OFAC License No. RUSSIA-EO14024-2023-1033893-1, including complete tracing disclosure, recall / return of funds from the correspondent chain, and/or use of a lawful alternative implementation route;

6. Enter injunctive relief requiring JPMorgan Chase Bank, N.A., by a deadline set by the Court, to provide MT103, MT199, SWIFT / UETR trace, interbank messages, explanation of Payment Rejected and Return Leg in Progress, and specific operational action to complete the licensed transfer;

7. Order JPMorgan Chase Bank, N.A., after return of the funds from the correspondent chain, to complete implementation of OFAC License No. RUSSIA-EO14024-2023-1033893-1 through the fiduciary/FBO structure, Plaintiff's Emirates NBD account as Trustee / Fiduciary Administrator, or another commercially reasonable, lawful, and documented route the Court deems proper;

8. Hold Ilya Shulman and Krista Santoro liable to the extent discovery establishes that they were aware of critical facts, received documents, failed to ensure adequate analysis, and contributed to the continuation of violations or concealment of material information; and

9. Grant such other legal or equitable relief as the Court deems just, proper, and proportional.

The preliminary amount in controversy, exclusive of further interest, costs, discovery-related adjustments, and any later amendment, is not less than $1,734,060.80, consisting of $234,060.80 as the licensed execution amount with interest as of June 4, 2026, $1,000,000 in punitive damages, and $500,000 for emotional distress, physical suffering, and humanitarian consequences.

Plaintiff reserves the right to increase or refine the amount sought after discovery concerning accrued interest, Chase internal rates, the actual location of the funds, reasons for rejection of payments, and other facts in Defendants' possession.

## XII. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable under the Seventh Amendment to the United States Constitution.

## XIII. SIGNATURE

Dated: June 6, 2026

Respectfully submitted,

_____

Evgeniy Ilin
Plaintiff, pro se
Tameem House, 5 Al Fosool Street
Al Thanyah 1, Hadaeq Mohammed Bin Rashid
Dubai, Dubai Municipality
United Arab Emirates
Office 2505 (internal unit 2501-16)
Telephone: +971 50 167 1872
Email: ieasky017@gmail.com

## EXHIBITS

| Exhibit | Document | Description / Relevance |
|---|---|---|
| A-1 | OFAC Specific License No. RUSSIA-EO14024-2023-1033893-1 | Original OFAC specific license dated April 22, 2026 authorizing return of the funds; key phrase: 'where the originator is able to demonstrate they maintain an account.' |
| A-2 | OFAC Licensing Division confirmation (May 21, 2026) | OFAC confirmation that the license remains valid and implementation is the responsibility of the financial institution. |
| A-3 | OFAC Licensing Division confirmation (May 22, 2026) | Second OFAC confirmation concerning license validity and status checking. |
| B-1 - B-12 | Correspondence with JPMorgan Chase | Letters and emails including May 19, June 5, June 2, June 6, Formal Demand Letter of May 22, Final Pre-Litigation Notice of May 28, and related correspondence. |
| B-13 | Chase letter dated June 5, 2026 (Case No. ECW260309-01584-R2) | Chase response concerning processing of payment, refusal to provide MT103/MT199, and related position. |
| C-1 | BNY Mellon response dated May 20, 2026 | BNY Mellon refuses to communicate with Plaintiff because he is not a direct client and instructs that Chase contact BNY Mellon via authenticated message. |
| C-2 | BNY Mellon letter dated June 2, 2026 | BNY Mellon states that on May 22, 2026 it released funds to Aktif Investment Bank for the Eldik Bank account; amount $234,060.80. |
| E-1 | Power of Attorney from JSC SEQUOIA to Evgeniy Ilin | Authority for Plaintiff to act on behalf of JSC SEQUOIA. |
| F-1 | Fiduciary Agreement / Temporary Agreement No. 01:2026 dated May 16, 2026 | Fiduciary agreement appointing Plaintiff as Trustee; JSC SEQUOIA remains beneficiary; no transfer of ownership or personal benefit. |
| F-2 | Corporate Resolution No. 5 dated May 15, 2026 | Corporate resolution approving the temporary fiduciary mechanism. |
| G-1 | Eldik Bank account closure certificate dated May 20, 2026 | Confirmation of closure of all accounts of the JSC SEQUOIA branch in Kyrgyzstan, including the USD account. |
| H-1 - H-3 | Medical documentation | Stage IV colorectal cancer records, German clinic letter, and advance payment request for EUR 20,000. |
| I-1 | Legal memorandum dated May 26, 2026 | Legal basis for fiduciary mechanism and relevant UCC / OFAC points. |
| I-2 | Final Notice of Facts dated May 27, 2026 | Summary of Chase's handling and Plaintiff's submitted documents. |
| I-3 | Urgent Confirmation of May 26, 2026 telephone conversation | Record of call concerning Chase contact with BNY Mellon and original-route handling. |
| I-4a | Ohmyfin tracker screenshot | Status ACSP and last update May 2, 2026. |
| I-4b | Deutsche Bank tracker screenshot | Independent tracker showing no movement. |
| I-5 | J.P. Morgan Payment Tracker screenshot dated June 5, 2026 | Official Chase tracker showing Payment Rejected. |
| I-6 | SWIFT gpi independent tracker screenshots | Payment Rejected and Return Leg in Progress statuses, last update May 22, 2026. |
| I-7 | Deutsche Bank tracker screenshot dated June 5, 2026 | Confirmation of Payment Rejected. |
| I-8 | Formal Demand Letter dated May 22, 2026 | Pre-suit demand letter with 21 exhibits. |
| U-1 | OCR declination letter dated June 3, 2026 | Office of Civil Rights jurisdiction declination. |

| U-2 | White House submission screenshot | Confirmation of submission to the President of the United States. |
|---|---|---|
| U-3 | Treasury OIG complaint confirmation | Confirmation of OIG complaint regarding OCC inaction. |
| U-4 | Email to BNY Mellon CEO dated May 31, 2026 | Request for assistance identifying funds or internal review. |
| U-5 | Email to Jamie Dimon dated May 31, 2026 | Direct escalation to JPMorgan Chase Chairman and CEO. |
| U-6 | NYDFS jurisdiction declination dated June 1, 2026 | NYDFS declination based on Chase's status as a national bank. |
| U-7 | Systemic risk alert to Federal Reserve Chair dated May 23, 2026 | Systemic risk and humanitarian urgency alert. |
| Additional | CFPB complaint screenshots showing duplicate / closed statuses | Evidence of exhaustion of administrative remedies and regulator inaction. |